**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **LOCAL 1764, AMALGAMATED,** | | |
|   **TRANSIT UNION,** *et al.*, | * | |
| | | |
|       **Plaintiffs,** | * | |
| | | |
| **v.** | * | **Case No.: PWG-14-334** |
| | | |
| **WMATA,** | * | |
| | | |
|       **Defendant.** | * | |
| | | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OPINION[1]**

Plaintiff transit unions have brought this action to compel arbitration against Defendant
WMATA.  They seek to arbitrate claims that, *inter alia*, Defendant did not provide the unions
with required notice of changes to working conditions that came about as a result of WMATA
entering new contracts for certain transit services.  Plaintiffs have moved for summary judgment,
arguing that the dispute between the parties is subject to arbitration under several employee
protective arrangements as well as under the WMATA Compact, all of which have binding
arbitration provisions.  Defendants have cross-moved for summary judgment on the grounds that

---

[1] This Memorandum Opinion disposes of Plaintiffs Local 1764, Amalgamated Transit Union and
Local 689, Amalgamated Transit Union's Motion for Summary Judgment and to Compel
Arbitration ("Pls.' Summ. J. Mot."), ECF No. 9, and supporting Memorandum ("Pls.' Summ. J.
Mem."), ECF No. 9-1; Defendant WMATA's Cross-Motion for Summary Judgment ("Def.'s
Cross-Mot."), ECF No. 10, and Memorandum of Points and Authorities in Support of
WMATA's (1) Cross-Motion for Summary Judgment and (2) Opposition to Plaintiffs' Motion
for Summary Judgment and to Compel Arbitration ("Def.'s Cross-Mot. Mem."), ECF No. 10-1;
Plaintiffs' Response to Defendant's Cross-Motion for Summary Judgment and Response to
Defendant's Opposition to Plaintiff's Motion for Summary Judgment ("Pls.' Summ. J. Reply"),
ECF No. 11; and Defendant's Reply in Support of WMATA's Cross-Motion for Summary
Judgment ("Def.'s Summ. J. Reply"), ECF No. 12.

Plaintiffs have not shown that the dispute arises under any of the existing employee protective arrangements and that the WMATA Compact does not apply.  I find that, although Plaintiffs have not shown that any employee protective arrangement applies, the dispute nevertheless falls under the arbitration provision of the WMATA Compact and, accordingly, I grant summary judgment to Plaintiffs.

## I.     BACKGROUND

In reviewing a motion for summary judgment, the Court considers the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor.  *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004). Where, as here, the Court is presented with cross-motions for summary judgment, the facts relevant to each motion must be considered in the light most favorable to the nonmovant.  *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).  Unless otherwise stated, this background is composed of undisputed facts.  *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

### A.  WMATA Compact and Employee Protective Arrangements

Defendant Washington Metropolitan Area Transit Authority ("WMATA") is an instrumentality "of the District of Columbia, the Commonwealth of Virginia and the State of Maryland, created by legislative compact among those jurisdictions and the United States of America to provide mass transportation services" in the Washington, D.C. metropolitan area. Compl. ¶ 3, ECF No. 1; Answer ¶ 3, ECF No. 6; *see also* WMATA Compact, Md. Code Ann., Transp. § 10-204, §§ 2–4.  Plaintiff Local 1764, Amalgamated Transit Union ("Local 1764") is the certified, recognized collective bargaining representative of employees who provide

WMATA's MetroAccess service through contracts with MV Transportation, Inc. ("MV") and Veolia Transportation, Inc. ("Veolia"). Compl. ¶ 5, ECF No. 1; Answer ¶ 5, ECF No. 6. Local 689, Amalgamated Transit Union ("Local 689") represents employees who provide WMATA's MetroAccess service through a contract with First Transit. *See* Certification of Representative, Pl.'s Mem. in Supp. of their Mot. to Compel Arbitration ("Pl.'s Summ. J. Mem.") Ex. K, ECF No. 9-13.[2]

WMATA was established by an interstate compact approved by Maryland, Virginia, the District of Columbia and, as required by U.S. Const. Art. I, § 10, by Congress as well. *See* Transp. § 10-204, § 86. Section 66(c) of the WMATA Compact provides for the arbitration of labor disputes, as follows:

> In case of any labor dispute involving the Authority and such employees where collective bargaining does not result in agreement, the Authority shall submit such dispute to arbitration by a board composed of three persons, one appointed by the Authority, one appointed by the labor organization representing the employees, and a third member to be agreed upon by the labor organization and the authority. . . . The determination of the majority of the board of arbitration, thus established, shall be final and binding on all matters in dispute. . . . The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

Transp. § 10-204, § 66.

---

[2] It also appears that "Local 689 is a labor union that represents some 7,700 WMATA employees, who comprise approximately 70 percent of the current WMATA workforce." *Wash. Metro. Area Transit Auth. v. Local 689, Amalgamated Transit Union*, 818 F. Supp. 2d 888, 892 (D. Md. 2011).

Among the services provided by WMATA is MetroAccess, "a shared ride transportation service for people who are unable to use fixed-route public transit due to disability." MetroAccess Customer Guide, Pl.'s Summ. J. Mem. Ex. G, ECF No. 9-9.  Plaintiffs assert that "substantial Federal Mass Transit Grant projects helped to purchase the vans, buildings, computers and software, communication equipment, and also to pay for operating costs including fuel, repair parts and equipment, salaries and the like" for MetroAccess, Pl.'s Summ. J. Mem. 2, but they provide no evidence to support this assertion.  *See* Fed. R. Civ. P. 56(c)(1)(A).[3] Although WMATA acknowledges that it receives federal funds, it correctly asserts that Plaintiffs have not pointed to any specific federal funding for MetroAccess that is relevant to this case. *See* Def.'s Mem. of Points and Auths. in Supp. of WMATA's (1) Cross-Mot. for Summ. J. and (2) Opp'n to Pls.' Mot. for Summ. J. and to Compel Arbitration ("Def.'s Cross-Mot. Mem.") 5, ECF No. 10-1.

Pursuant to section 13(c) the Urban Mass Transit Act of 1964, 49 U.S.C. § 5333, WMATA and Defendants have entered into a number of employee protective arrangements ("EPA"s) with respect to MetroAccess projects.  *See* January 1973 EPA, Pls.' Summ. J. Mem. Ex. C, ECF No. 9-5; Sept. 12, 2006 EPA, Pls.' Summ. J. Mem. Ex. D, ECF No. 9-6; Sept. 20, 2006 EPA (together with the September 12, 2006 EPA, the "2006 EPAs"), Pls.' Summ. J. Mem. Ex. E, ECF No. 9-7.  Each of the EPAs provides for the arbitration of labor disputes related to the specific project covered by that EPA.

The January 1973 EPA covers a "Project" involving "the purchase of D. C. Transit System, Inc. [], W.V.&M. Coach Co. [], AB&W Transit Company [], and W.M.&A. Coach Co.

---

[3]  Plaintiffs' failure to comply with Rule 56(c) is a problem throughout their summary judgment briefing, and as a result, issues as fundamental as whether MetroAccess has received any federal funds cannot be established on the current record.

[], three transit garages, 600 new transit buses, a central radio receiving and bus locating facility, and 1800 2-way radios, 200 bus shelters, and miscellaneous equipment."  January 1973 EPA 1.

Its arbitration provision provides:

> In the event there arises any labor dispute or controversy . . . with respect to the protection afforded by this agreement, or with respect to the interpretation, application, or enforcement of the provisions of this agreement, . . . which cannot be settled by the parties hereto within thirty (30) days after the dispute or controversy arises, it may be submitted at the written request of any such party to a board of arbitration to be selected as hereinafter provided, one arbitrator to be chosen by each interested party. . . . The decision by majority vote of the arbitration board shall be final and binding, as the decision of the arbitration board. . . . The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, hours, working conditions or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining of collective bargaining agreements, the terms to be included in such agreements, and the interpretation or application of such collective bargaining agreements, any grievance that may arise, any questions concerning representation, and any controversy arising out of or by virtue of any of the provisions of this agreement for the protection of employees affected by this Project.

January 1973 EPA ¶ 14.  Paragraph 14 of the January 1973 EPA requires WMATA to provide notice to the unions representing its workers of certain changes that may affect the working conditions of its labor force.  *See id.* ¶ 6.

The September 12, 2006 EPA applies to FTA Grant DC-80-X080, but does not expressly state the nature of that grant or what it covers.  September 12, 2006 EPA.  Similarly, the September 20, 2006 EPA applies to FTA Grant DC-90-X079 but does not expressly provide details about that grant.  However, both of the 2006 EPAs contain substantially similar language providing:

> The term "Project", as used herein, shall not be limited to the particular facility, service, or operation assisted by Federal funds, but shall include any changes, whether organizational, operational, technological, or otherwise, which are the result of the assistance provided.  The phrase "as a result of the Project," shall

> when used in this arrangement, include events related to the Project occurring in anticipation of, during, and subsequent to the Project and any program of efficiencies or economies related thereto; provided, however, that volume rises and falls of business, or changes in volume and character of employment brought about solely by causes other than the Project (including any economies or efficiencies unrelated to the Project) are not within the purview of this arrangement.

Sept. 12, 2006 EPA ¶ 1; Sept. 20, 2006 EPA ¶ 1.  Each of the 2006 EPAs requires advance

notice to affected employees or their union of any actions that "may result in displacements or

dismissals or rearrangements of the working forces as a result of the Project."   Sept. 12, 2006

EPA ¶ 2(b); Sept. 20, 2006 EPA, ¶ 5.  Each of the 2006 EPAs contains an arbitration provision.

The Sept. 12, 2006 EPA provides:

> Any dispute, claim, or grievance arising from or relating to the interpretation, application or enforcement of the provisions of this arrangement, not otherwise governed by Section 12(c) of the Model Agreement, the Labor–Management Relations Act, as amended, Railway Labor Act, as amended, or by impasse resolution provisions in a collective bargaining or protective arrangement involving the Recipient and the Union, which cannot be settled by the parties thereto within thirty (30) days after the dispute or controversy arises, may be submitted at the written request of the Recipient or the union to arbitration administered by the American Arbitration Association under its Labor Arbitration Rules.  The parties further agree to accept the arbitrator's award as final and binding.
>
> In the event of any dispute as to whether or not a particular employee was affected by the Project, it shall be his/her obligation to identify the Project and specify the pertinent facts of the project relied upon.

Sept. 12, 2006 EPA ¶ 4.  The September 20, 2006 EPA provides:

> In the event there arises any labor dispute with respect to the protection afforded by this arrangement, or with respect to the interpretation, application or enforcement of the provisions of this arrangement, not otherwise governed by Section 12(c) hereof, the Labor–Management Relations Act, as amended, Railway Labor Act, as amended, or by impasse resolution provisions in a collective bargaining or protective arrangement involving the Recipient and the Union, which cannot be settled by the parties thereto within thirty (30) days after the dispute or controversy arises, it may be submitted at the written request of the Recipient or the union to a board of arbitration to be selected as hereinafter provided.  One arbitrator is to be chosen by each interested party, and the arbitrators thus selected shall endeavor to select a neutral arbitrator who shall

6

serve as chairman. . . . The decision by majority vote of the arbitration board shall
be final and binding as the decision as the arbitration board . . . .

Sept. 20, 2006 EPA ¶ 15(a).

### B.  The Current Dispute

From September 22, 2005 until June 30, 2013, MetroAccess service was provided by MV

Transportation as WMATA's sole provider.  Kent Decl. ¶¶ 3–4, Def.'s Cross-Mot. Mem. Ex. 1,

ECF No. 10-2.  As the expiration date of MV's contract approached, WMATA decided to divide

the contracts for MetroAccess service among multiple providers.  *Id.* ¶ 4.  WMATA states that

the decision to change its contracting model was driven by "[o]perational considerations, not

receipt of federal funds," and that "federal funds were not provided in order to implement the

new model."  *Id.* ¶ 5.  Plaintiffs do not dispute this fact and offer no evidence to support their

position that "Defendant receives federal financial assistance to operate its Metroaccess service."

Pls.' Summ. J. Mem. 4.  Although Plaintiffs argue that it is necessary to "analyz[e] the flow of

funds from the federal government to WMATA and its Metroaccess operation" to determine

their role in MetroAccess, *id.* at 5, they have not provided an affidavit or declaration to that

effect as is required by Fed. R. Civ. P. 56(d).  Nevertheless, WMATA appears to acknowledge

that "WMATA received federal funds" in connection with services it provides.  *See* Def.'s

Cross-Mot. Mem. 2.

When Local 1764 learned that MV no longer would be the sole contractor for

MetroAccess service, its counsel, Douglas Taylor, sent a letter to WMATA expressing its view

that "WMATA has determined to rearrange and reorganize the working forces of employees who

are affected by Federal projects of assistance," and that "Local 1764 is entitled to notice of such

reorganization and to establish through negotiations the terms of the transition as it may impact

employees."   Letter from Douglas Taylor to Christian Kent, Assistant General Manager,

WMATA (Feb. 13, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.  WMATA responded on February 22, 2013, expressing its view that the notice "obligations were not triggered by [WMATA's] decision to alter the way the transit agency structures the provision of MetroAccess service" because the changes were not made "'as a result of the Project.'"  Letter from Christian Kent to Douglas Taylor (Feb. 22, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.  In response, Local 1764's counsel elected to arbitrate the dispute pursuant to the various EPAs.  Letter from Douglas Taylor to Christian Kent (Feb. 28, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8. WMATA also has maintained that it is not the employer of any MetroAccess employees because they are employed directly by individual contractors, and therefore it cannot be forced to arbitrate any disputes with the unions representing MetroAccess employees.  *See* Letter from Christian Kent to Douglas Taylor (Dec. 20, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.

Notwithstanding Plaintiffs' objections, on March 1, 2013, WMATA awarded contracts to MV, Veolia, First Transit, Diamond Transportion, and MTM for discrete portions of its MetroAccess Service.  Kent Decl. ¶ 6.  On March 5, 2013, it once again advised Local 1764 of its view that WMATA "uses no federal funds for the operation of MetroAccess" and therefore it was under no obligation to notify the union about the new contracts or to arbitrate the parties' dispute.  Letter from Christian Kent to Douglas Taylor (March 5, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.

The record does not reflect that WMATA ever responded directly to Local 1764's request to arbitrate the dispute made on February 28, 2013 or participated in the arbitration process.  On July 19, 2013, the American Arbitration Association ("AAA") sent a letter to Douglas Taylor and Christian Kent purporting to respond to Taylor's request to provide a list of neutral arbitrators and stating that WMATA had not paid its share of the filing fee to AAA.  Letter from

Susan Pfeiff to Douglas Taylor and Christian Kent (July 19, 2013), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.

On January 23, 2014, Taylor sent a letter to Michael Wolf informing him that Local 689 had selected him as chairman of an arbitration panel and that "WMATA has refused to participate in this matter."  Letter from Douglas Taylor to Michael Wolf (Jan. 23, 2014), Pls.' Summ. J. Mem. Ex. F, ECF No. 9-8.  Wolf accepted his selection, but only "subject to the other parties' agreement to arbitrate or to an order of the court."  Email from Michael Wolf to Douglas Taylor (Jan. 28, 2014, 21:16 EST).  WMATA has not named an arbitrator and maintains that it has no obligation to do so.  Answer ¶ 14.

Plaintiffs filed their Complaint and Motion to Compel Arbitration in this Court on February 3, 2014, alleging (I) violation of agreements to arbitrate and (II) violation of the WMATA Compact, and seeking an order compelling WMATA to arbitrate the dispute pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.  *See* Compl.  On May 2, 2014, Plaintiffs filed a Motion for Summary Judgment and to Compel Arbitration ("Pls.' Summ. J. Mot."), ECF No. 9, and supporting Memorandum ("Pls.' Summ. J. Mem."), ECF No. 9-1.  WMATA responded with a Cross-Motion for Summary Judgment ("Def.'s Cross-Mot. for Summ. J."), ECF No. 10, and consolidated Memorandum supporting its cross-motion and opposing Plaintiffs' motion ("Def.'s Cross-Mot. Mem."), ECF No. 10-1; Plaintiffs filed a consolidated Response to Defendant's Cross-Motion for Summary Judgment and Response to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Summ. J. Reply"), ECF No. 11; and WMATA has filed a Reply in Support of WMATA's Cross-Motion for Summary Judgment ("Def.'s Summ. J.

Reply"), ECF No. 12.  The motions now are fully briefed and are before me; having reviewed the filings, I find a hearing is not required.  Loc. R. 105.6.[4]

## II.  STANDARD OF REVIEW

The Federal Arbitration Act provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement," so long as the district court would have jurisdiction over the controversy in the absence of the agreement to arbitrate.  9 U.S.C. § 4.  "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  *Id.*  In the event that a factual dispute does exist, "the court shall proceed summarily to the trial thereof."  *Id.*  Except where otherwise provided, an application to the court under the Federal Arbitration Act "shall be made and heard in the manner provided by law for the making and hearing of motions."  8 U.S.C. § 6.

---

[4] The parties' filings are unusually sparse for a case of this complexity, *see* Pls.' Summ. J. Mem. (ten pages); Def.'s Cross-Mot. Mem. (eleven pages); Pl.'s Summ. J. Reply (ten pages); Def.'s Summ. J. Reply (fourteen pages), particularly in light of this Court's generous page limits of fifty pages for a principal brief and twenty-five for a reply, Loc. R. 105.3.  Although I find that the filings are adequate to resolve this dispute without a hearing, they just barely are so.  While padding a brief or memorandum unnecessarily to meet a maximum page limit is not to be condoned, the parties here have failed to provide sufficient factual and legal authority to support the overwhelming majority of their arguments and, in some cases, have relegated important arguments to footnotes.  The nature and history of the WMATA Compact and the relationships between the parties are convoluted and deserve careful consideration.  The parties' failure to establish a sufficient factual record and adequately discuss the legal issues has complicated my efforts to resolve this dispute and does not serve the interest of the parties or the Court in facilitating the just and speedy resolution of this action.  *See* Fed. R. Civ. P. 1.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). When considering cross-motions for summary judgment, the court must consider "each motion . . . individually" and view "the facts relevant to each . . . in the light favorable to the nonmovant." *Mellen*, 327 F.3d at 363. If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* "[U]nder Fed. R. Civ. P. 56, as amended in 2010, facts in support of or opposition to a motion for summary judgment need not *be* in admissible form; the requirement is that the party identify facts that *could be* put in admissible form." *Mallik v. Sebelius*, 964 F. Supp. 2d 531, 546 (D. Md. Aug. 28, 2013) (citing *Niagara Transformer Corp. v. Baldwin Techs., Inc.*, No. DKC-11-3415, 2013 WL 2919705, at *1 n.1 (D. Md. June 12, 2013)).

A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999). The substantive law governing the case determines what is material.

*See Hoovan-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A fact that is not of consequence to the case, or is not relevant in light of the governing law, is not material. *Id.*; *see* Fed. R. Evid. 401 (defining relevance).

## III. DISCUSSION

The Federal Arbitration Act ("FAA") "reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (internal citations omitted). A validly entered agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "The general rule is that whether particular disputes are arbitrable under a contractual arbitration clause are questions for the court to decide as a matter of contract interpretation. But parties may of course provide by contract for arbitration even of arbitrability issues." *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 117 (4th Cir. 1993) (citing *AT & T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 649 (1960)). "Generally, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.' This presumption, however, does not apply to the issue of which claims are arbitrable." *Carson v. Giant Food, Inc.*, 175 F.3d 325, 329 (4th Cir. 1999) (internal citations omitted). "[T]he parties can agree to let an arbitrator determine the scope of his own jurisdiction. Their agreement must, however, 'clearly and unmistakably' provide that the arbitrator shall determine what disputes the parties agreed to arbitrate." *Id.* (quoting *AT & T Techs.*, 475 U.S. at 649.

As a threshold matter, there is no question that there are various agreements to arbitrate between the parties.  The WMATA Compact and the EPAs each contain express arbitration provisions and no party has challenged the validity of those provisions.  *See* WMATA Compact, Transp. § 10-204, § 66; 1973 EPA ¶ 14; Sept. 12, 2006 EPA ¶ 4; Sept. 20, 2006 EPA ¶ 15(a).  The dispute between the parties involves only the applicability of the notice provisions of various EPAs.  *Compare* Letter from Douglas Taylor to Christian Kent (Feb. 13, 2013) ("Local 1764 is entitled to notice of such reorganization and to establish through negotiations the terms of the transition as it may impact employees"), *with* Letter from Christian Kent to Douglas Taylor (Feb. 22, 2013) ("Paragraph (5) [notice] obligations were not triggered by the Washington Metropolitan Area Transit Authority's (WMATA) decision to alter the way the transit agency structures the provision of MetroAccess service").

In supporting their respective positions, the parties primarily talk past one another.  Plaintiffs' primary contention is that the WMATA Compact and the EPAs contain broad arbitration provisions that cover virtually all disputes including disputes over the scope of the agreements to arbitrate.  *See* Pls.' Summ. J. Mem. 5–8; Pls.' Summ. J. Reply 2–9.  Nowhere in their briefs do Plaintiffs provide factual support for their contention that one or more of the EPAs apply to this dispute.  In contrast, WMATA's memoranda focus primarily on the applicability of the EPAs, correctly noting that Plaintiffs have not identified a "Project" defined by any EPA, *see* Def.'s Cross-Mot. Mem. 5–10, and focusing heavily on the merits of its underlying case, *see id.*  Plaintiffs' failure to identify the basis for applying any of the EPAs and of WMATA to address any other issue in depth complicates the resolution of this matter.

Although Plaintiffs discuss the applicability of the EPAs generally, they appear to be relying specifically—or at least primarily—on the September 20, 2006 EPA.  Plaintiffs attached

13

the arbitration provision appearing at paragraph 15 of that agreement as an exhibit to the Complaint,[5] *see* Fed. R. Civ. P. 10(c), and in its exchanges with WMATA, Plaintiff claims that WMATA has violated notice obligations under "paragraph 5" of the EPAs, Letter from Douglas Taylor to Christian Kent (Feb. 13, 2013), which identifies the location of notice provisions only in the September 20, 2006 EPA.

In response, WMATA argues that this dispute does not fall under the September 20, 2006 EPA or any other EPA because Plaintiffs have not identified a "Project" that brings the reorganization of MetroAccess service within the ambit of an EPA. *See* Def.'s Cross-Mot. Mem. 5. However, this is not strictly correct; Plaintiffs implicitly have identified FTA Grant DC-90-X079 as the relevant project by invoking the September 20, 2006 EPA applicable to that grant. *See* Compl. Ex. A.[6]  But no party has explained the scope of that grant or made a particularized showing as to whether it bears any relation to MetroAccess.  Thus, even though the arbitration provision of the September 20, 2006 EPA provides broadly for arbitration "with respect to the interpretation, application or enforcement of" its provisions, I cannot, on the sparse facts before me, find that this dispute is covered by that EPA or that the parties "clearly and unmistakably" provided for an arbitrator to resolve questions surrounding the arbitrability of this dispute. *Cf. Carson*, 175 F.3d at 329.

---

[5] Plaintiffs did not particularly identify the agreement from which the provision was excerpted, *see* Sept. 20, 2006 EPA Excerpt, Compl. Ex. A, ECF No. 1, but the excerpt provided matches the full version of the September 20, 2006 EPA that was provided to the Court as an exhibit to Plaintiffs' Summary Judgment Memorandum, *see* Sept. 20, 2006 EPA.

[6] Even were I to accept Plaintiffs' *ipse dixit* argument that "all aspects of the Defendants' Metroaccess service is dependent on federal funds," Pls.' Summ. J. Reply 4, that would not resolve the question of which agreement governs the current dispute and whether its arbitration provision applies.  Nevertheless, it is telling that WMATA supports its view that Plaintiffs' failure to identify a "Project" is fatal to their claims by relying exclusively on arbitration awards ruling on the merits, *see* Def.'s Cross-Mot. Mem. 5–6, and has not cited to any judicial ruling finding that arbitration of a similar dispute was inappropriate.

Plaintiffs claim that, notwithstanding the EPAs, this dispute also must be arbitrated pursuant to Section 66(c) of the WMATA Compact. Pls.' Summ. J. Mem. 5–6. Plaintiffs further contend that even the threshold question of arbitrability is a matter to be resolved through arbitration and not by the court. Pls.' Summ. J. Reply 4–9. Unsurprisingly, WMATA maintains that arbitrability is a matter for the court to decide. Def.'s Summ. J. Reply 11–13. There is a paucity of case law interpreting the WMATA Compact. Plaintiffs have provided a forty-year-old unpublished preliminary injunction that ordered the parties to arbitrate a dispute over a cost-of-living provision in their CBA pursuant to Section 66(c). Preliminary Inj., *WMATA v. Amalgamated Transit Union, Local 689*, No. 74-663 (D.D.C. May 6, 1974). More recently,  the U.S. District Court for the District of Columbia addressed the arbitrability of disputes under the Compact as a matter of first impression. In that case, Judge Rudolph Contreras found that the WMATA Compact contains "no clear evidence of consent" to allow an arbitrator to determine the threshold question of arbitrability. *WMATA v. Local 2, Office and Prof'l Emps. Int'l Union*, 965 F. Supp. 2d 13, 48 (D.D.C. 2013). But after considering the issue on the merits, the court nevertheless held that the subject matter of that dispute—whether an arbitrator had the authority to place certain subcontracting provisions into a collective bargaining agreement—was arbitrable. *Id.*

This case is distinct from *Local 2* because it does not involve arbitration over the terms of a collective bargaining agreement. Rather, Plaintiffs seek to arbitrate, among other things, the question of whether the notice provisions of one or more EPAs already in existence apply to the reorganization of MetroAccess service. The WMATA Compact provides for arbitration of "any controversy concerning any differences or questions that may arise between the parties *including but not limited to* the making or maintaining of collective bargaining agreements . . . and the

interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation."   Transp. § 10-204, § 66(c) (emphasis added).   Though the EPAs themselves are not collective bargaining agreements, *see, e.g.*, *Office of Labor–Management Standards—Questions and Answers*, U.S. Dep't of Labor (last updated July 18, 2014), http://www.dol.gov/olms/regs/ compliance/QandA.htm, Section 66(c) expressly does not limit itself to such agreements only.   This clearly is a "difference[] or question[] that [has] arise[n] between the parties," and the dispute over the scope and applicability of the EPAs—at least one of which, the January 1973 EPA, was the subject of an agreement between the parties—on the facts before me, appears sufficiently similar in nature to one over the applicability of collective bargaining agreement terms so as to fall within the scope of Section 66(c).   Simply put, Plaintiffs seek to have an arbitrator rule on "the interpretation or application" of arrangements governing the relationship between the parties and, so long the definition of a "labor dispute" is to be "broadly construed," it would be an unduly narrow reading of the WMATA Compact to exclude this dispute from its reach on this sparse record.[7]

WMATA also argues, in a footnote, that Section 66(c) does not apply here because it is limited only to situations "where collective bargaining does not result in agreement" and no collective bargaining occurred here.   *See* Def.'s Cross-Mot. Mem. 11 n.2.   But Section 66(c) does not, of its terms, make collective bargaining a precondition for arbitration; it simply excludes from its scope those instances in which a dispute is resolved by collective bargaining.

---

[7] WMATA maintains that "[t]here are historical reasons why Section 66(c) does not apply, but it is not necessary to explore that history in this case."   Def.'s Cross-Mot. Mem. 11 n.2.   This vague allusion does not comply with the requirement that a memorandum "set[] forth the reasoning and authorities in support of it," Loc. R. 105.1, and has deprived me of the opportunity to consider whether the apparently important historical context of Section 66(c) has any bearing on this dispute unless I were willing to take WMATA's self-serving representations at face value.   Nor is there any justification for holding back on apparently important arguments in light of the unusually short memoranda of law filed in this relatively complex legal dispute.

To rule otherwise would seem to yield the absurd result of allowing a party to avoid the obligation to arbitrate simply by stonewalling its adversary as WMATA arguably has done here. WMATA, by raising this argument in a footnote without any legal citation, has not demonstrated that such a result is justified, much less required, by the WMATA Compact or any statute. Accordingly, I refuse to read such a precondition into the Compact.

WMATA has argued—in its reply brief—that the WMATA Compact does not apply because Plaintiffs are not acting on behalf of WMATA employees.  *See* Def.'s Summ. J. Reply 6.  "Arguments raised for the first time in reply generally should not be considered without affording the opposing party an opportunity to respond . . . ."  *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 315 (D. Md. 2014) (citing *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 512 n.8 (D. Md. 2009)).  This particularly is the case where, as here, a party is advancing a complicated and nuanced legal argument—without citation to any authority at all—that by no means is clear from the record, the text of the WMATA Compact or the EPAs, or the broad definition of "employee" provided under 29 U.S.C. § 152(3).  In light of the complex interplay of agreements and statutes, I decline to take up the question of whether Plaintiffs are acting on behalf of WMATA's employees (or whether they need to be in order to invoke the arbitration provisions germane to this dispute).  WMATA may yet be able to advance that argument before an arbitrator, but by failing timely to do so here while Plaintiffs still had the opportunity to respond, WMATA has waived it in this Court.

Accordingly, the dispute between the parties falls within the arbitration provision of Section 66(c) of the WMATA Compact, and it appears that Plaintiffs properly have sought to initiate arbitration.  It is uncontested that WMATA has refused to participate in the arbitration and, therefore, that it has not complied with its obligations under Section 66(c) of the Compact.

Accordingly, pursuant to 9 U.S.C. § 4, they will be ordered to do so, Plaintiffs' Motion for Summary Judgment will be granted, and Defendant's Motion for Summary Judgment will be denied.

## IV.    CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Summary Judgment will be GRANTED and Defendant's Motion for Summary Judgment will be DENIED.

A separate order shall issue.

Dated: <u>February 10, 2015</u>                    _____/S/_____

                                                   Paul W. Grimm
                                                   United States District Judge

dsy